# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| THOUSAND OAKS BARREL CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-848 (LMB/TCB) |
| | ) | |
| FREEDOM OAK BARRELS and | ) | |
| AMORPHOUS GROUP LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff Thousand Oaks Barrel Co.'s ("Plaintiff") Motion for Default Judgment and accompanying memorandum. (Dkts. 27-28.)[1] For the reasons articulated below, the undersigned recommends that Plaintiff's Motion be GRANTED.

### I.    BACKGROUND

**A.    Procedural Posture**

Plaintiff filed this lawsuit on July 21, 2021, asserting claims under the United States Copyright Act of 1976 and Lanham Act against Defendants Freedom Oak Barrels and Michael O'Rourke. (Dkt. 1.) Plaintiff filed its First Amended Complaint on September 23, 2021, joining Amorphous Group LLC as a Defendant. (Dkt. 8.) Plaintiff filed its Proposed Summons for Freedom Oak Barrels and O'Rourke on October 4, 2021, which the Clerk issued. (Dkts. 11-14.)

---

[1] The relevant filings before the Court include Plaintiff's First Amended Complaint ("First Am. Compl.") (Dkt. 8); Plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 27); Plaintiff's Memorandum in Support of Motion for Default Judgment ("Mem. Supp.") (Dkt. 28); Declaration of Bryan Weisberg ("Weisberg Decl.") (Dkt. 32-1); Expert Report Jennifer Vanderhart ("Vanderhart Rep.") (Dkt. 32); and all attachments and exhibits submitted with those filings.

The Summons was returned executed as to Freedom Oak Barrels on October 13, 2021. (Dkt. 15.) On November 22, 2021, Plaintiff filed its first Request for Entry of Default as to Defendant Freedom Oak Barrels. (Dkt. 16.) The Clerk entered default as to Freedom Oak Barrels on November 26, 2021. (Dkt. 17.) On December 27, 2021, the Court issued an order directing Plaintiff to show cause why the action should not be dismissed for its failure to serve the remaining Defendants. (Dkt. 18.) Plaintiff filed a Motion for Alias Summons and to Remove Defendant O'Rourke and supporting memorandum on January 6, 2022. (Dkts. 19, 20.) The Court, construing Plaintiff's Motion as a request for voluntary dismissal, granted the Motion and dismissed O'Rourke without prejudice. (Dkt. 21.) The Clerk subsequently issued an Alias Summons for Amorphous Group, which was returned executed on January 11, 2022. (Dkts. 22, 23.)

On February 1, 2022, Plaintiff filed its second Request for Entry of Default as to Amorphous Group LLC. (Dkt. 24.) The Clerk entered default as to Amorphous Group LLC on February 14, 2022. (Dkt. 25.) The Court subsequently ordered Plaintiff to file a motion for default judgment and accompanying memorandum within ten days of that order. (Dkt. 26.) Ten days later, Plaintiff filed the instant Motion for Default Judgment against Defendants Freedom Oak Barrels and Amorphous Group LLC, the accompanying memorandum in support, and a notice of hearing for March 25, 2022. (Dkts. 27-29.) At the hearing before the undersigned, no representative for Defendants appeared or responded in any way. (Dkt. 38.) The undersigned took this matter under advisement to issue this Report and Recommendation.

### B. Jurisdiction and Venue

Before the Court can render default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) proper venue.

2

1) Subject-Matter Jurisdiction

First, the undersigned finds that this Court has proper subject-matter jurisdiction as to all claims in this case. Subject-matter jurisdiction must be proper as to each claim in federal court. A federal district court has original jurisdiction in a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Additionally, U.S.C. § 1338(a) grants federal courts original jurisdiction over any civil action arising under U.S. copyright law. 28 U.S.C. § 1338(a). Here, Plaintiff brought claims under the Copyright Act and the Lanham Act, which are federal statutes. (First Am. Compl. ¶¶ 1, 9, 11, 57-73.) Therefore, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as to Claims I, II, V, and VI. The undersigned accordingly finds that this Court has subject-matter jurisdiction over all of Plaintiff's claims.

2) Personal Jurisdiction

Second, the undersigned finds that this Court has personal jurisdiction over Defendants. The inquiry for personal jurisdiction requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)). A court has general jurisdiction over an individual defendant who is domiciled in the forum state. *Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

If a defendant is not domiciled in the forum, both the Virginia long arm statute and the safeguards of the Fourteenth Amendment must be satisfied for the court to exercise personal jurisdiction. *Tire Eng'g & Distrib., LLC*, 682 F.3d at 301. Because Virginia is the forum state, these two tests collapse into one due process inquiry. *Id.* Due process requires that a defendant have sufficient "minimum contacts" with Virginia "such that the maintenance of the suit does not

3

offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In cases involving internet-generated contacts, courts in the Fourth Circuit ask whether "(1) [the defendant] directs electronic activity into the state, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).

Here, Defendants maintain sufficient contacts with Virginia to justify personal jurisdiction. The Court has personal jurisdiction over Freedom Oak. (First Am. Compl. ¶ 19.) Freedom Oak is an Oklahoma unincorporated proprietorship of Michael O'Rourke that conducts business through online retail stores. (First Am. Compl. ¶ 15; Mem. Supp. at 8; Weisberg Decl. ¶ 34.) Defendant's online stores provides shipping to Virginia and sells products in United States dollars. (Mem. Supp. at 8; Weisberg Decl. ¶ 53.) Freedom Oak's social media pages and website display pop-up notifications showing the names and residences of at least twenty-one (21) barrel purchasers living in Virginia as of 2021. (*Id.*) Therefore, through its fully interactive online stores, Freedom Oak directs business into Virginia, targets Virginia consumers, and causes harm to the Plaintiff in Virginia. (First Am. Compl. ¶ 15; Mem. Supp. at 8; Weisberg Decl. ¶ 53.)

The Court has personal jurisdiction over Amorphous Group for the same reasons. Like Freedom Oak, "Amorphous Group is the sole-proprietorship of O'Rourke operating under those names." (First Am. Compl. ¶ 16; Mem. Supp. at 9; Weisberg Decl. ¶ 34.) O'Rourke sells to consumers in Virginia through his personal businesses, Freedom Oak and Amorphous Group, thus giving rise to personal jurisdiction. Overall, by targeting of Virginia residents, Freedom Oak and Amorphous Group have established sufficient minimum contacts with the forum.

4

Accordingly, the undersigned finds that this Court may properly exercise personal jurisdiction over Defendants under specific personal jurisdiction and the federal long-arm statute.

3) Venue

Third, the undersigned finds that venue in this Court is proper. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" and in a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §§ 1391(b)(1)-(2). As a fallback, venue is proper where a defendant "is subject to the court's personal jurisdiction with respect to such action." § 1391(b)(3). Here, Plaintiff alleges that venue is proper in the Eastern District of Virginia because a substantial part of the events or omissions giving rise to this lawsuit occurred in the District. (First Am. Compl. ¶ 19.) Therefore, the undersigned finds that venue is proper under 28 U.S.C. § 1391(b).

**C.     Service of Process**

Before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. Defendants Freedom Oak and Amorphous Group are unincorporated, sole proprietorships owned exclusively by Michael O'Rourke. (*See* First Am. Compl. ¶ 16; Mem. Supp. at 9; Weisberg Decl. ¶ 34 .) Pursuant to Federal Rule of Civil Procedure 4(h), a plaintiff may serve an unincorporated proprietorship by several means. Fed. R. Civ. P. (4)(h). A plaintiff may deliver the summons and complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Federal Rule of Civil Procedure 4(e)(1) also provides that service may be effectuated pursuant to state law where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1)(A) (referring to Fed. R. Civ. P. 4(e)(1)).

5

(1) Defendant Freedom Oak

Defendant Freedom Oak is an unincorporated proprietorship formed under Oklahoma law. Freedom Oak employee Garrett Manasko was served with a copy of the First Amended Complaint and Summons on October 11, 2021 14310 N. Lincoln Blvd., Unit 310, Edmond, OK 73013. (Dkt. 16-1.) The Summons Return states that "Garrett Manasko/Employee . . . is designated by law to accept summons of process on behalf of Freedom Oak Barrell." (Dkt. 15.) The undersigned accordingly finds that Plaintiff properly served Defendant Freedom Oak. *See* Fed. R. Civ. P. 4(h)(1)(B).

(2) Defendant Amorphous Group

Defendant Amorphous Group is also an unincorporated proprietorship formed under Oklahoma law. Pursuant to Federal Rule 4(e)(1), service of process may be effectuated pursuant to Virginia or Oklahoma law. Fed. R. Civ. P. 4(e)(1). Virginia Code section 80.1-305 provides that "process against an unincorporated association may be served on any officer, trustee, director, staff member, or other agent." Va. Code. Ann. § 80.1-305. And even if service is not "served or accepted as provided," the Virginia Code allows for insufficient process to be cured where it "has reached the person to whom it is directed within the time prescribed by law . . .." Va. Code Ann. § 8.01-288.

Here, the Proof of Service from the Alias Summons Return states that a process server "personally served the summons on the individual at Amorphous Group LLC 14310 N. Lincoln Blvd. #310 Edmond, Oklahoma 73013 on January 10, 2022." (Dkt. 23.) The attached Affidavit of Service states "Successful Attempt: Jan 10, 2022, 11:56 am CST at 14310 N Lincoln Blvd, Edmond, OK 73013 received by FREEDOM OAK BARRELS, MICHAEL O'ROURKE, and AMORPHOUS GROUP LLC. Other: Female inside the warehouse over the age of 15." (Dkt.

6

23-1.) The undersigned finds that this female in the warehouse was a "officer, trustee, director,

staff member, or other agent." Va. Code Ann. § 80.1-305. Therefore, Plaintiff properly served

Defendant Amorphous Group with process pursuant to Virginia law. Even if this service was

insufficient, the facts demonstrate that Amorphous Group, owned by O'Rourke, received notice

of this lawsuit within ninety days of the filing of the First Amended Complaint. (*See* Weisberg

Decl. ¶ 55, Ex. AC.) The undersigned therefore finds that Plaintiff properly served Defendants

Freedom Oak and Amorphous Group. *See* Fed. R. Civ. Pro. 4(e)(2)(C); (Dkts. 16, 24.)

## II. FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that

Plaintiff has established the following facts.

### A.   Thousand Oaks' Business and Copyrighted Works

Plaintiff Thousand Oaks manufactures and sells an innovative, small, personalized, and

commercial-grade oak bourbon barrel (the "barrel"). (First Am. Compl. ¶¶ 20-21.) Since

developing the barrel in 1999, Plaintiff has been a leading wholesale supplier of small bourbon

barrels and other spirit and wine aging products. (*Id*; Weisberg Decl. ¶ 33.) The barrel is made

from new wood from American White Oak trees, which Plaintiff exports to Mexico for barrel

manufacturing. (Weisberg Decl. ¶ 42.)  In 2003, Plaintiff developed its e-commerce site,

<www.1000oakbarrel.com>, through which it advertises and sells the barrel and other products

directly to consumers. (First Am. Compl. ¶ 22.) Plaintiff also distributes the barrel to national

retailers and distributors. (First Am. Compl. ¶ 21.)

Since 2012, Plaintiff has used its P5 barrel photograph as the product representation to

advertise and sell the barrel to consumers. (First Am. Compl. ¶ 22; Weisberg Decl. ¶¶ 39-40.)

The P5 barrel photo is an original work of authorship by Plaintiff. (First Am. Compl. ¶ 23;

Weisberg Decl. ¶ 39.) Plaintiff is the sole and exclusive owner of all right title and interest in the P5 barrel photo. (*Id.*) The P5 barrel photo is registered with the United States Copyright Office with the registration number VAu 1-258-692 and has an effective date of October 28, 2016. (First Am. Compl. ¶ 23, Ex. A; Weisberg Decl. ¶ 39.)  Plaintiff also displays a barrel map photo on their site, which allows customers to visualize their personalized engravings on prospective barrels. (First Am. Compl. ¶ 25.)

**B.      Freedom Oak's Infringing Conduct**

Defendant Freedom Oak is an unincorporated proprietorship owned and operated by Michael O'Rourke. (First Am. Compl. ¶ 16; Weisberg Decl. ¶ 34.) Freedom Oak competes with Plaintiff by selling lower-priced barrels. (First Am. Compl. ¶ 24; Weisberg Decl. ¶ 42.) O'Rourke, operating as Freedom Oak began importing oak barrels in 2018 through at least December 2021. (Weisberg Decl. ¶ 46.) For example, Freedom Oak paid the barrel manufacturer Barriles la Arboleda SA de CV, of Zapopan, Jalisco, Mexico approximately $250,000.00 for wood barrel imports. (*Id.*)  Freedom Oak's barrels are made from used wood manufactured from tequila barrels, which do not qualify as bourbon barrels because of their reuse. (Weisberg Decl. ¶ 42.)

Freedom Oak's website, <www.freedomoakbarrels.com>, is the sole point of sale for its barrels. (First Am. Compl. ¶ 25.) Freedom Oak uses Plaintiff's P5 barrel photo on their website to advertise and sell their lower-quality barrel. (First Am. Compl. ¶ 25; Weisberg Decl. ¶ 43.) Plaintiff has publicly displayed the P5 barrel photo and a barrel map on their website since at least 2012. (First Am. Compl. ¶ 26.) The barrel map photo allows customers to view and customize the name, location, and date to be engraved on a barrel. (First Am. Compl. ¶ 26; Weisberg Decl. ¶ 43.)

8

Freedom Oak appropriated and/or copied the P5 barrel photo and barrel map from Plaintiff without permission. (First Am. Compl. ¶ 26.) Defendants, on information and belief, obtained Plaintiff's images from their publicly available website. (First Am. Compl. ¶ 59.) Freedom Oak publicizes Plaintiff's images on its website to advertise and sell its knock-off barrels, as if they were Plaintiff's products and designs. (First Am. Compl. ¶ 26.) The goods that Freedom Oak shows on its home page originated with Plaintiff, and Freedom Oak merely repackaged and rebranded Plaintiff's goods as Freedom Oak's goods without authorization. (First Am. Compl. ¶ 27; Weisberg Decl. ¶ 45.)

Under a licensing agreement with Plaintiff, a reseller may be authorized to photograph and advertise Plaintiff's barrels. (First Am. Compl. ¶ 28; Weisberg Decl. ¶ 44.) Plaintiff authorizes resellers to use a "reseller photo" of two Thousand Oaks barrels so that the reseller may advertise and resell the products online. (First Am. Compl. ¶ 28; Weisberg Decl. ¶¶ 44-45, Ex. F.) Freedom Oak displays Plaintiff's reseller photo on Freedom Oak's business Facebook page and Instagram accounts without authorization. (First Am. Compl. ¶ 28; Weisberg Decl. ¶ 45.) Freedom Oak's Facebook page includes at least three copies of the reseller photo, and it uses the reseller photo as the corporate image for its Instagram account (*Id.*) Freedom Oak did not alter the reseller photo and repackages Plaintiff's products for resale. (Weisberg Decl. ¶ 45.)

Freedom Oak has made false and misleading statements of fact and has published misleading commercial advertisements about its products, including the designation of origin of the barrels depicted in the P5 barrel photo and reseller photo. (First Am. Compl. ¶ 29.) Freedom Oak made these statements on their website, Facebook page, and online advertising campaigns. (*Id.*) Plaintiff has never given Freedom Oak permission or authorization to use the copyrighted P5 barrel photo, product map image, or reseller photo. (First Am. Compl. ¶ 30.) Yet Freedom

9

Oak uses these images and products to advertise, offer, sell, and distribute oak barrels in Virginia and interstate commerce. (*Id.*) Freedom Oak could have used their own photograph of their own barrel product, yet they chose to use Thousand Oaks' P5 barrel photo, creating the appearance that they are selling a higher-quality barrel. (First Am. Compl. ¶ 35.) Freedom Oak is using Thousand Oaks' images to pass off their products as Thousand Oaks' when, in fact, they are different, lower quality barrels. (First Am. Compl. ¶ 36.)

Freedom Oak has also purchased search engine advertisements on Google, Yahoo, and Bing so a search for "Thousand Oaks Barrel" will list a heading, image, and/or link to Freedom Oak's website as the first link. (First Am. Compl. ¶ 37; Weisberg Decl. ¶ 49.)

## C.   Amorphous Group's Infringing Conduct

Defendant Amorphous Group, also solely owned by O'Rourke, provides Freedom Oak with e-commerce advertising, marketing, sales, and fulfillment services. (First Am. Compl. ¶ 51; Weisberg Decl. ¶¶ 47, 48.) O'Rourke has personally imported thousands of oak barrels from Mexico since 2019. (First Am. Compl. ¶ 31.) Defendant Amorphous Group also began importing oak barrels from Barriles la Arboleda, Mexico for Freedom Oak beginning in 2019. (First Am. Compl. ¶ 32.) Amorphous imports other products for Freedom Oak, such as glassware and a laser for etching graphics onto wood. (*Id.*) Amorphous operates an e-commerce fulfillment warehouse in Oklahoma where Amorphous receives and fulfills online orders for "Freedom Oak Barrels." (First Am. Compl. ¶ 33.) Because O'Rourke is the sole proprietor Amorphous and Freedom Oak, Amorphous has direct knowledge of Freedom Oak's alleged acts. (First Am. Compl. ¶¶ 34, 51, 54; Weisberg Decl. ¶ 34.) Amorphous also has a direct financial interest in Freedom Oak's alleged acts. (First Am. Compl. ¶ 55.)

**D.    Profits Earned and Damages Caused by Infringing Conduct**

Plaintiff submitted an expert damages report prepared by Jennifer Vanderhart, Ph.D., who calculates economic damages for intellectual property, breach of contract, and other commercial disputes. (Vanderhart Rep. ¶¶ 1-8.) Because Defendants have not appeared, the report relies upon publicly available information and the Weisberg Declaration to estimate Defendants' profits from their barrel sales. (Vanderhart Rep. ¶¶ 22-28.)

Vanderhart's report calculates the total weight and total wholesale value of Defendants' barrel product annual imports based on data from the Panjiva supply chain database. (Vanderhart Rep. ¶¶ 22, 23, Figure 2.) Vanderhart also estimates the online retail price of Defendants' barrels by size based on datapoints found on Freedom Oak's website through the Wayback Machine archive. (Vanderhart Rep. ¶ 24, Figure 3.) The report relies upon Weisberg's estimates that 50% of Freedom Oak's imported and sold barrels are 2-Liter barrels, costing $13.50 USD. (Vanderhart Rep. ¶ 25; Weisberg Decl. ¶¶ 35, 38.) The report also uses Weisberg's estimations that Defendants sell 20% 1-Liter barrels, 20% 5-Liter barrels, and 10% 3-Liter and 10-Liter barrels, costing $12.50, $21.00, $17.00, and $27.00 respectively. (Weisberg Decl. ¶¶ 36, 38.)

Because of this variation in cost per barrel, Vanderhart used a weighted average of $15.15 in costs per barrel. (Vanderhart Rep.¶ 26, Figure 4.)  Vanderhart divided the total wholesale value of the imports by this weighted cost to find the total number of barrels, 127,823. (*Id.*) Multiplying the number of barrels by the weighted average price per barrel of $72.47, Vanderhart calculated an estimated total barrel revenue of $9,263,660. (*Id.*) Vanderhart then subtracted the estimated costs of $1,936,520 from net revenue to find $7,327,140 in profits. (*Id.*)

Defendants' actions have confused customers and caused Plaintiff to lose business. (Weisberg Decl. ¶ 50.) For example, Wine Enthusiast, a significant wholesale customer, ceased

11

purchasing barrels from Thousand Oaks after mistaking some of Freedom Oak's advertisements as Thousand Oaks' because of Freedom Oak's use of the P5 barrel photo and barrel map. (*Id.*) After seeing Thousand Oaks' P5 barrel photo and map image used to advertise Freedom Oak's lower-priced barrels, Wine Enthusiast believed that Thousand Oaks was competing with it by offering a lower price to a competitor. (*Id.*) This confusion damaged Thousand Oaks' relationship with Wine Enthusiast. (*Id.*)

Defendants' actions have also confused individual customers. Thousand Oaks' customer service has received at least nine calls from customers reporting defects in their barrels. (Weisberg Decl. ¶ 51.) But these customers' names did not appear when searched in Thousand Oaks' system, revealing that the complaining customers purchased the barrels from Freedom Oak and conflated the two companies when reporting the defects. (*Id.*) The Better Business Bureau and other consumer reporting groups have received hundreds of complaints regarding Freedom Oak's products and services. (First Am. Compl. ¶ 38; Weisberg Decl. ¶ 52.) If consumers mistakenly attribute these complaints to Thousand Oaks, such confusion may damage Thousand Oaks' goodwill and good reputation in the marketplace. (Weisberg Decl. ¶ 52.)

Plaintiff Thousand Oaks attempted to deliver cease-and-desist letters to Freedom Oak and O'Rourke in February and March 2021 via the United States Postal Service, Federal Express, and a verified Email address. (First Am. Compl. ¶ 40; Weisberg Decl. ¶ 54, Exs. U, V.) Plaintiff received no response. (First Am. Compl. ¶¶ 40-41.) O'Rourke sent about twenty (20) text messages directly to Weisberg's cellphone from November to December 2021 in response to the filing of this action. (Weisberg Decl. ¶ 55, Ex. AC.) O'Rourke's messages included unfounded accusations, threats of lawsuits, threats to Thousand Oaks' wholesale customers, and personal insults directed at Weisberg. (*Id.*) Weisberg did not reply to these messages. (*Id.*)

III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Plaintiff alleges four counts against Defendants: (1) Copyright Infringement against Freedom Oak (Count I), (2) False Designation of Origin against Freedom Oak (Count II), (3) Contributory Liability for Copyright Infringement against Amorphous Group (Count V), and (4) Contributory Liability for False Designation of Origin against Amorphous Group (Count VI). The undersigned will consider each element of each cause of action in turn.

**A.      Freedom Oak's Copyright Infringement of Plaintiff's P5 Barrel Photo.**

Plaintiff asserts copyright infringement against Defendant Freedom Oak pursuant to the Copyright Act. (*See* First Am. Compl. ¶¶ 57-66.) The Copyright Act provides that a copyright owner has exclusive rights to its copyrighted works. *See* 17 U.S.C. §§ 101, 106(1), (3)-(5), 501. In other words, the owner has the exclusive right to reproduce the works; distribute copies to the public by sale, rental, lease, lending, or other transfer of ownership; publicly perform the works; or display the works. *See id.* One who violates any of the copyright owner's exclusive rights is

13

considered an infringer. *See id.* For a claim of copyright infringement, a plaintiff must show (1) its ownership of a valid copyright for the allegedly infringed material and (2) "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

    1) <u>Plaintiff Owns a Valid Copyright.</u>

First, Plaintiff has sufficiently shown that it owns a valid copyright for the work at issue. Plaintiff alleges that it owns the copyright for P5 barrel photo. (*See* First Am. Compl. ¶ 23, Ex. A.) Copyright certificates create a presumption of valid ownership. 17 U.S.C. § 410(c). Exhibit A contains Plaintiff's Certificate of Registration with the United States Copyright Office with an effective date of October 28, 2016. (First Am. Compl., ¶ 23, Ex. A.)

    2) <u>Defendant Freedom Oak Infringed Plaintiff's Exclusive Rights.</u>

Second, Plaintiff alleges that Defendant Freedom Oak violated the Plaintiff's reproduction rights through the unauthorized copying and displaying of the P5 barrel photo. 17 U.S.C. § 106(1), 501; (*See* First Am. Compl. ¶¶ 60-62; Weisberg Decl. at ¶ 43; Mem. Supp. at 10.) Copyright holders have the exclusive right to make copies of their works. 17 U.S.C. § 106(1). As outlined in detail above, the P5 barrel photo is published on Plaintiff's website. Defendant took this publicly available, copyrighted image and published it to its website without authorization. This copying and displaying of the P5 barrel photo violates Plaintiff's exclusive rights to reproduce its work. *See* 17 U.S.C. § 106(1).

**B.**     **Freedom Oak's False Designation of Origin Liability Under the Lanham Act.**

Plaintiff further alleges that Defendant Freedom Oak misrepresented the origin of their barrels in violation of Section 43 of the Lanham Act. 17 U.S.C. § 1125(a); (First Am. Compl. ¶¶ 67-73.) The Lanham Act provides for liability where a party "uses in commerce . . . any false

designation of origin . . . that is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 17 U.S.C. § 1125(a)(1)(A). A party may violate this section of the Lanham Act through "reverse passing off," where the party misrepresents the goods and services of another by marketing them as their own. *Dastar Corp. v. Twentieth Century Fox Film*, 539 U.S. 23, 28, n.1 (2003) (defining "reverse passing off" as "misrepresent[ing] someone else's goods or services as his own").

Merely advertising a competitor's falsely designated goods is sufficient for a violation of the Lanham Act, even where a defendant did not sell the goods. *See Smith v. Montoro*, 648 F.2d 602, 607 (9th Cir. 1981); *Universal Furniture Int'l, Inc. v. Collezione Eur. USA, Inc.*, 618 F.3d 417 (4th Cir. 2010). To state a claim for reverse passing off, a plaintiff must allege that "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 710 (4th Cir. 2016) (citing *Universal Furniture Int'l*, 618 F.3d at 438.)

Here, Plaintiff sufficiently alleges that Freedom Oak engaged in reverse passing off. *First*, the P5 barrel photo and the barrel map originated with Plaintiff. *Second*, Defendant falsely designated the origin of this work by using the photograph on its website and social media pages to advertise, market, and sell its lower-quality barrels. Freedom Oak competes directly with Plaintiff and sells lower-quality barrels. Freedom Oak displays Plaintiff's P5 barrel photo and barrel map without authorization on their e-commerce website and social media pages. Freedom Oak uses Plaintiff's images as the primary images to advertise, market, and sell their lower-quality products. By using Plaintiff's images, Freedom Oak displays Plaintiff's products on its

website as the goods for sale. Freedom Oak merely repackaged and rebranded Plaintiff's barrel
and barrel map as their own. Additionally, Freedom Oak is not an authorized reseller but
nevertheless uses Plaintiff's "reseller photo" to sell its products.

*Third*, Defendant's use of Plaintiff's images has caused and will likely cause confusion.
Plaintiff cites at least nine instances of consumer confusion because of Freedom Oak's conduct.
Freedom Oak has additionally caused confusion among customers by purchasing advertisements
on search engines that lead consumers to Freedom Oak's website when they search "Thousand
Oaks Barrel." *Finally*, Plaintiff was harmed by Defendant's reverse passing off because it lost a
business relationship with a distributor, Wine Enthusiast. Further, the complaints filed with the
Better Business Bureau and other consumer groups about Defendant are likely to impair
Plaintiff's business reputation.

Therefore, the undersigned finds that Plaintiff sufficiently alleged a false designation of
origin claim under the Lanham Act against Defendant Freedom Oak.

## C.   Amorphous Group's Contributory Infringement of the P5 Barrel Photo.

Plaintiff's First Amended Complaint alleges contributory liability against Defendant
Amorphous for infringement of Plaintiff's exclusive rights. (First Am. Compl. ¶¶ 234-39.)
Common law contributory copyright infringement may be found where someone "intentionally
induc[es] and encourage[s] direct infringement" of a copyrighted work by another. *Metro-*
*Goldwyn-Mayer Studios Inc., et al. v. Grokster, Ltd., et al.*, 545 U.S. 913, 930 (2005). Mere
knowledge of infringing uses by third parties is insufficient to establish intentional inducement.
*Id.* at 937. Instead, a "clear expression or other affirmative steps taken to foster infringement" is
required. *Id.* at 936-37.

16

Here, Plaintiff sufficiently alleged that Defendant Amorphous Group intentionally induced Defendant Freedom Oak's infringement of the Plaintiff's Work. (*See* First Am. Compl. ¶¶ 88-94.) Amorphous Group knew about Freedom Oak's intentional infringement because O'Rourke is the sole proprietor of both Freedom Oak and Amorphous Group. (*See* Weisberg Decl. ¶ 34.) And, in addition to this actual knowledge, Amorphous has provided e-commerce advertising, marketing, sales, and fulfillment services to Freedom Oak related to the infringement. Accordingly, the undersigned finds that Plaintiff sufficiently pled a claim of contributory copyright infringement against Defendant Amorphous Group.

**D.    Contributory False Designation of Origin Liability Under the Lanham Act.**

The Plaintiff further alleges that Amorphous Group is contributorily liable for Freedom Oak's Lanham Act false designation of origin violation. Plaintiff alleges that Amorphous Group induced or caused Freedom Oak to misrepresent the origin of its products. As discussed above, the Lanham Act provides for liability where a party "uses in commerce . . . any false designation of origin . . . that is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 17 U.S.C. § 1125(a)(1)(A).

The Fourth Circuit has not expressly recognized contributory liability under the Lanham Act, but courts in this Circuit have applied the Eleventh Circuit's test for contributory liability in the false advertising context under section 1125(a)(1). *See ISK Biocides, Inc. v. Pallet Mach. Grp.*, 3:21-cv-386-JAG, 2022 WL 122923 (E.D. Va. Jan. 12, 2022) (citing *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1276-77 (11th Cir. 2015); *see also LStar Dev. Grp., Inc. v. Vining*, 2020 WL 4344891 (E.D.N.C. Sept. 23, 2021). Under the 11th Circuit's test, a plaintiff must show that (1) "a third party in fact directly engaged in [false association] that injured the plaintiff" and (2) "the defendant contributed to that conduct either by knowingly inducing or causing the conduct,

17

or by materially participating in it." *ISK Biocides, Inc.*, 2022 WL 122923 at * 7-8 (quoting *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1276-77 (11th Cir. 2015)).

Here, Plaintiff has sufficiently alleged contributory liability under the Lanham Act against Defendant Amorphous Group. First, as discussed above, Freedom Oak directly engaged in false association or false designation of origin that injured Plaintiff. Second, Amorphous Group contributed to this conduct by knowingly participating in Freedom Oak's business by importing and fulfilling orders of oak barrels for Freedom Oak. O'Rourke is the sole proprietor of Amorphous Group and Freedom Oak and therefore has knowledge of both of their operations. Amorphous has profited from Freedom Oak's reverse passing off scheme. Accordingly, Plaintiff sufficiently alleged contributory liability against Amorphous Group under the Lanham Act.

IV. REQUESTED RELIEF

Plaintiff requests that the Court award (1) damages under the Copyright Act, (2) damages under the Lanham Act, (3) injunctive relief under the Copyright Act, (4) injunctive relief under the Lanham Act, and (5) attorneys' fees and costs. (First Am. Compl. at 21-23.) In assessing damages, "a district court entering a default judgment may award damages ascertainable from the pleadings." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998). The Court considers each form requested relief in turn.

**A.      Defendants' Profits Under the Copyright Act.**

The Copyright Act allows the owner of a registered copyright to elect to recover "(1) the copyright owner's actual damages and any additional profits of the infringer, as provide by subsection (b); or (2) or statutory damages . . .." 17 U.S.C. § 504(a). The Fourth Circuit has held that the Copyright Act does not provide for the trebling of profits or damages. *Nintendo of Am., Inc. v. Aeropower Co., Ltd.*, 34 F.3d 246, 251 (4th Cir. 1994). Plaintiff seeks to recover

18

Defendants' profits, rather than its own damages, arising from Defendants' willful Copyright infringement pursuant to section 504(b). (First Am. Compl. ¶ 63; Mem. Supp. at 15-19.)

"The copyright owner is entitled to recover . . . any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). And a copyright owner must "present proof only of the infringer's gross revenue" to establish the infringer's profits. *Id.* This language "creates an initial presumption that the infringer's 'profits attributable to the infringement' are equal to the infringer's gross revenue." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th Cir. 2003) (citations omitted). The burden then shifts to the infringer to demonstrate that his or her gross revenue and are not profits are not attributable to the copyright violation. *Id.*

Here, Plaintiff submitted an expert damages report calculating Defendants' gross revenue resulting from their infringing use of Plaintiff's copyrighted P5 barrel photo. (Vanderhart Rep. ¶¶ 18-27.) The report calculates Defendant Freedom Oak's total barrel revenue to be $9,263,660.00. (Vanderhart Rep. ¶ 26, Figure 4.) Defendants have not appeared in this action, and therefore failed to rebut the presumption and show that their revenues are "attributable to factors other than the copyrighted work." *Bouchat*, 346 F.3d at 520 (citations omitted). Defendants failed to establish established "deductible expenses" from their profits. *Id.* Plaintiff's calculations, however, estimated Defendants' costs to be $1,936,520.00. (Vanderhart Rep. ¶ 27.) Subtracting revenue from expenses, the report finds that Defendants' profits were $7,327,140.00 and requests that value in damages. (*Id.*) Because Defendants' profits are attributable to their infringement, the undersigned finds that Plaintiff may recover $7,327,140.00 in profits from Defendants for their infringement of Plaintiff's copyrighted image.

19

### B.    Defendants' Profits Under the Lanham Act.

The Lanham Act entitles a successful plaintiff, "subject to the principles, of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The equitable factors recognized by the Fourth Circuit include: "(1) whether the defendant had the intent to conceive or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006)  (citing *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir.2002)).

Here, Plaintiff seeks to recover $7,327,140 in Defendants' profits for their "reverse passing off" false designation of origin violation under the Lanham Act. (*See* First Am. Compl. ¶ 70; Mem. Supp. at 16-19.) As relevant here, a plaintiff may recover damages under both the Copyright Act and Lanham Act where a defendant has been found to violate both statutes. *Nintendo of Am. Inc., Ltd.*, 34 F.3d at 252. Because Defendants violated the Lanham Act as found above, Plaintiff is entitled to recover Defendants' profits.

Defendants acted with the intent to deceive consumers by appropriating Plaintiff's barrel images to sell their own, knockoff barrels and by engaging in other advertising to confuse customers. Defendants' actions caused sales to be diverted from Plaintiff because of the customer confusion created by Defendants. An injunction will not fully compensate Plaintiff for its losses, and Plaintiff did not unreasonably delay in asserting its rights. Finally, Defendants' reverse passing off conduct is a case of "palming off," and it is in the public interest to make reverse passing off  unprofitable. Accordingly, the undersigned finds that Plaintiff is entitled to a separate award of  Defendants' profits for Lanham Act violations.

20

The undersigned further finds that the Defendants' profits owed to Plaintiff should not be trebled. Under section 1117(b), Courts may award treble damages under certain circumstances; however, the statute does not permit the trebling of an award of defendant's profits, which the statute distinguishes from plaintiff's damages. *Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 719 (4th Cir. 2015) ("[T]he district court erred in awarding treble damages, which are punitive and are not authorized by § 1117(a) for a recovery based on profits."). When recovering profits instead of damages, a plaintiff may only seek enhancement of profits to obtain additional monetary relief. 15 U.S.C. § 1117(a) ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."); *id.* at 719. Here, the record does not show Plaintiff's recovery based on Defendants' profits to be inadequate. Therefore, the undersigned find that Plaintiff is entitled to recover $7,327,140 in Defendants' profits for their Lanham Act violations.

### C.     Plaintiff is Entitled to Injunctive Relief Under the Copyright Act.

The Plaintiff seeks injunctive relief under the Copyright Act. *See* 17 U.S.C. § 502(a). Specifically, Plaintiff requests that the Court permanently enjoin Defendants from directly and contributorily infringing on Plaintiff's P5 barrel photo. The Copyright Act provides that a court may grant injunctive relief to prevent the infringement of copyrights. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.").

To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to

21

compensate for that injury;
(3) that, considering the balance of hardships between the plaintiff and defendant, a
    remedy in equity is warranted; and
(4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay*

*Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). The undersigned determines that

permanent injunctive relief is appropriate against Defendants Freedom Oak and Amorphous Group

because the above four elements are satisfied.

First, the Plaintiff has demonstrated that it has suffered—and will continue to suffer—

irreparable harm. In copyright cases, "[i]rreparable injury [can be] derive[d] from the nature of

copyright violations, which deprive the copyright holder of intangible [and] exclusive rights."

*Christopher Phelps*, 492 F.3d at 544. Here, the undersigned determined that Defendant Freedom

Oak infringed on Plaintiff's copyrighted P5 barrel photo. Further, Defendant continues to use the

P5 barrel photo without permission, this use makes monetary damages inadequate as

Defendants' conduct will continue to harm Plaintiff in the future absent an injunction. These

findings support a determination that the Plaintiff has been irreparably harmed and that

injunctive relief is appropriate.

Second, other remedies at law are inadequate to compensate Plaintiff. Despite receiving

proper service of process, Defendants failed to respond in any way to this lawsuit. This lack of

an appropriate response demonstrates a near certainty of continuing copyright infringement and

makes it impossible to determine the actual profits and damages in the case. In addition to this

failure to respond, the text messages sent by O'Rourke to Weisberg shows that Defendants,

solely owned by O'Rourke, are unlikely to cooperate with Plaintiff's requests absent the Court's

issuance of injunctive relief. (*See* Weisberg Decl. ¶ 32, Ex. AC.)

Third, the only "hardship" Defendants would experience from a permanent injunction

22

would be the requirement to follow clearly established copyright law. The undersigned accordingly finds that this third factor easily weighs in favor of granting injunctive relief, as Plaintiff's hardships (including lost profit and infringement of its legal rights) far outweigh any purported hardship that may Defendants face.

Finally, the public interest favors an injunction. The public benefits from the judicial enforcement of copyrights because it preserves their legal integrity and protection of creativity. *See EMI Apr. Music*, 618 F. Supp. 2d at 511. Furthermore, granting injunctive relief in this matter would do nothing to "disserve []" the public. *See Christopher Phelps*, 492 F.3d at 543. Here, an injunction would enforce Plaintiff's legal rights and maintain the integrity of its copyrighted P5 barrel photo. Additionally, an injunction would protect the public from Defendants' infringing conduct that misleads customers to purchase knock-off versions of Plaintiff's barrels. The undersigned finds that, because of Defendants' continuing infringement and his failure to respond to this lawsuit, injunctive relief against Defendants is appropriate and the best means to prevent future harm to Plaintiff.

**D.      Plaintiff is Entitled to Injunctive Relief under the Lanham Act.**

Plaintiff seeks injunctive relief under the Lanham Act, 15 U.S.C. § 1116(a). Specifically, Plaintiff asks that the Court enjoin Defendants from using Plaintiff's images, products, or derivatives thereof to advertise, market, distribute, or sell Defendants' barrel products and from falsely designating the origin of Defendants' products. (*See* First Am. Compl. at 23.)

The Lanham Act provides that a court may grant injunctive relief to prevent false designations of origin. *See* 15 U.S.C. § 1116(a) (Courts enforcing the Lanham Act "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark

23

registered in the Patent and Trademark Office or to prevent a violation under subsection

(a), (c), or (d) of section 1125 of this title.").

 To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

 (1) that it has suffered an irreparable injury;
 (2) that remedies available at law, such as monetary damages, are inadequate to
   compensate for that injury;
 (3) that, considering the balance of hardships between the plaintiff and defendant, a
   remedy in equity is warranted; and
 (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps*, 492 F.3d at 543 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

(2006)).

 Permanent injunctive relief is appropriate against Defendants because the above four

elements are satisfied. First, Plaintiff has demonstrated that it has suffered—and will continue to

suffer—irreparable harm. As discussed above, the undersigned determined that Defendants used

Plaintiff's images in a way that is likely to cause confusion. Further, Plaintiff continues to suffer

lost profits and goodwill from Defendants' past and ongoing reverse passing of its knock-off

barrel, which Plaintiff originated. Ultimately, monetary damages are inadequate to remedy this

harm, as Defendants' conduct will continue to injure Plaintiff in the future absent an injunction.

These findings therefore support a determination that Plaintiff has been irreparably harmed and

that injunctive relief is appropriate.

 Second, other remedies at law are inadequate to compensate Plaintiff. Despite receiving

proper service, Defendants failed to respond in any way to this lawsuit. Defendants and

O'Rourke's lack of an appropriate response demonstrates that there is a near certainty that

Defendants will continue their reverse passing off infringement as outlined above. Furthermore,

the failure to respond and O'Rourke's hostile text messages discussed above show that

Defendants are unlikely to cooperate with Plaintiff's requests absent the Court's issuance of

injunctive relief.

Third, the only "hardship" Defendants would experience from a permanent injunction would be the requirement to follow clearly established law and to cease its unfair business practices. This apparent hardship, however, does not affect the balancing of interests under this test. The undersigned accordingly finds that this third factor easily weighs in favor of granting injunctive relief, as Plaintiff's hardships (including lost profit from Defendants' false designation of the origin of their products) far outweigh any purported hardship that Defendants would face.

Finally, the public interest favors an injunction. The purpose of trademark is to protect the public from confusion about 'the identity of the enterprise from which goods and services are purchased.'" *Toolchex*, 634 F. Supp. 2d at 594 (quoting *AMP Inc. v. Foy*, 540 F.2d 1181, 1185-86 (4th Cir. 1976)). Furthermore, granting injunctive relief in this matter would do nothing to "disserve []" the public. *See Christopher Phelps*, 492 F.3d at 543. Here, an injunction would prevent confusion, enforce Plaintiff's legal rights, and prevent the public from being misled into believing Defendants' products are associated with Plaintiff and its goodwill and reputation. The undersigned accordingly finds that injunctive relief is appropriate and the best means to prevent future harm to Plaintiff due to Defendants' continuing reverse passing off of Plaintiff's products and their failure to respond to this lawsuit.

### E.     Attorneys' Fees and Costs.

Lastly, the Plaintiff requests that the Court award the attorneys' fees and costs incurred in bringing this action.

1) Attorneys' Fees

The Copyright Act authorizes courts "to award a reasonable attorney's fee to the prevailing party as part of the cost." 17 U.S.C. § 505. Courts in the Fourth Circuit consider four

factors to determine if attorney's fees are appropriate under the Copyright Act: "(1) 'the motivation of the parties,' (2) 'the objective reasonableness of the legal and factual positions advanced,' (3) 'the need in particular circumstances to advance considerations of compensation or deterrence,' and (4) 'any other relevant factor presented.'" *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.*, 30 F.3d 503, 505 (4th Cir. 1994) (quoting *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225 (4th Cir. 1993)).

These factors weigh heavily in favor of granting attorneys' fees to Plaintiff. First, Plaintiff's motivation is to guard its intellectual property and goodwill from Defendants' infringing and deceptive activities. Second, although unchallenged by Defendants, Plaintiff's legal and factual positions are objectively reasonable given the allegations in the First Amended Complaint discussed thoroughly above. Third, as discussed, Defendants' copyright infringement and reverse passing off remains ongoing and requires deterrence. Accordingly, the undersigned finds that an award of attorneys' fees is appropriate.

    2)   <u>Costs</u>

Plaintiff additionally requests that the Court award the costs incurred in bringing this action. The Copyright Act authorizes courts to award "full costs" to a successful plaintiff. 17 U.S.C. § 505. Costs include reasonable out-of-pocket expenses the attorney incurred in pursuing legal services that would typically be charged to a fee-paying client. *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Courts routinely award costs to a successful plaintiff on default judgment, especially when the defendant committed willful copyright infringement. *See, e.g., Malibu Media, LLC v. Redacted*, 2016 U.S. Dist. LEXIS 89165, at *14 (D. Md. July 11, 2016). The undersigned finds that an award of costs to Plaintiff is appropriate here.

26

## V. Recommendation

For the reasons stated above, the undersigned recommends that this Court enter default judgment against Defendants Freedom Oak and Amorphous Group for Counts I, II, V, and VI of Plaintiff's First Amended Complaint.

Specifically, the undersigned recommends that the Court award Plaintiff a total of $14,654,280 in profits from Defendants, jointly and severally for their Copyright Act and Lanham Act violations. The undersigned also recommends that the Court enter a permanent injunction requiring Defendants to cease:

(1) Copying, distributing, altering, displaying, hosting, selling and/or promoting copyright protected images and websites or spurious imitations thereof, authored or owned by Thousand Oaks, in connection with the offering of any retail store services, including but not limited to owning or operating the website freedomoakbarrels.com;

(2) Operating any other retail store or website that purports to be used in connection with Thousand Oaks copyrighted content, displays images of Thousand Oaks' website or products, or that is confusingly similar, or that is calculated to confuse consumers into thinking that products sold originated from Thousand Oaks, when it/they are not;

(3) Registering, owning, or using any domain name that is used in connection with Thousand Oaks copyrighted content, displays images of Thousand Oaks' website or products, or that is confusingly similar, or that is calculated to confuse consumers into thinking that products sold originated from Thousand Oaks, when it/they are not;

(4) Using in connection with Defendants' activities, goods, or services (or purported goods or services) any false or deceptive designations, representations, or descriptions of Defendants or their activities, goods, or services (or purported goods or services), whether by symbols, words, designs, statements, photographs, or other devices, which would damage or injure Thousand Oaks or its customers, or which would give Defendants an unfair competitive advantage or result in consumer deception;

(5) Committing other acts calculated to cause consumers to believe that Defendants' domain names, websites, web content, or retail store services are offered under the authorization, sponsorship, supervision, or control of Thousand Oaks, or otherwise are connected with Thousand Oaks or 1000oaksbarrel.com, when they are not;

(6) Further infringing the Thousand Oaks Copyrighted Content, or damaging any associated goodwill;

(7) Engaging in any other activity constituting unfair competition with Thousand Oaks, or constituting an infringement of Thousand Oaks copyrighted content, or constituting any damage to Thousand Oaks' or Bryan Weisberg's name, reputation, or goodwill.

(Dkt. 27-1.) And finally, the undersigned recommends that the Court award Plaintiff pre-judgment and post-judgment interest and reasonable attorneys' fees and costs in amounts to be determined by the Court.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

July 11, 2022
Alexandria, Virginia

28